Howard Elisofon, Esq.
John Oleske, Esq.
Attorneys for Dominick & Dominick LLC
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Email: helisofon@herrick.com

**Document Electronically Filed**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
RONALD AHLEGIAN and PAUL BEATTY,

                         Plaintiffs,               Docket No. 09 Civ. 0353 (NRB)

        -against-

DOMINICK & DOMINICK LLC, KEVIN P.
MURPHY, ANTHONY S. CORBETT, P.
CHRISTIAN BREVIG and MICHAEL J.
CAMPBELL,

                      Defendants.
-------------------------------------------------------

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## DOMINICK & DOMINICK LLC'S  MOTION TO DISMISS

# TABLE OF CONTENTS

**Preliminary Statement**................................................................................................ 1

**Facts** ............................................................................................................................ 3

**Argument** ................................................................................................................... 8

   1.   Plaintiffs' Claim for Violation of Section 10(b), Fails to Plead Reliance,
and Fails to Meet the Particularity Requirements of Rule 9(b)
and the PSLRA with Respect to Scienter. ................................................... 8

      A.   Plaintiffs Fails to State a Fraud Claim Due to Their
Inability to Plead Justifiable Reliance.................................................... 9

         i.    The "Bespeaks Caution" Doctrine ............................................. 10

         ii.    Sophistication................................................................................ 12

         iii.   Conclusion - Plaintiffs Have Failed to Plead Reliance .......................... 14

      C.   Plaintiffs Fails to State a Fraud Claim Due to Their Inability to Plead Loss Causation15

      D.   Plaintiffs Have Not Pleaded Scienter With The
Particularity Required by Rule 9(b) and the PSLRA.......................................... 16

   2.   Plaintiffs' Claim for Common-Law Fraud Fails for the Reasons
Precluding their Federal Securities Act Claim.......................................................... 18

   3.   Plaintiffs' Control-Person Claim is Barred By Their Failure To Allege
the Three Essential Elements of Such a Claim. ...................................................... 19

   4.   There is No Privity with D&D Allowing for a Claim of Beach of Contract. ................... 21

   5.   Plaintiffs' Negligence Claim is Barred by the Martin Act. ............................................ 21

   6.   Plaintiffs' Request for a Declaratory Judgment is
Improperly Directed at D&D, and Seeks Non-Declaratory
Relief that Cannot Be Awarded as Against D&D. ................................................... 22

**Conclusion** ............................................................................................................... 24

### Preliminary Statement

Plaintiffs are sophisticated investors who made speculative investments in GrinRx, Inc. (the "company"), which they was explicitly told, in writing, was a startup dental-products company with no sales history, no other established revenue stream, and no physical or liquid assets other than the funds provided by the participants in the private-placement offering conducted by Defendant Dominick & Dominick LLC ("D&D").   When they made their investments, Plaintiffs knew—and again, acknowledged in writing—that they knew that none of the company's purported advantages could be relied upon, and that it was entirely possible that the company would fail, resulting in the total loss of their investment.

However, now that that possibility have come to pass—as it often does with untested startup ventures—Plaintiffs have decided to point fingers in an effort to recover their risky investment.  Specifically, they are looking to D&D as a retroactive insurance policy, alleging various forms of misconduct by D&D brokers and bankers that, they say, should entitle them to recoup their entire failed investment at D&D's expense.

However, none of the misconduct Plaintiffs allege—*even if accepted as true*—actually subjects D&D to any liability.   The extensive written disclosures "bespeaking caution" that they received, coupled with their own sophistication, including admitted expertise in the retail distribution field make it clear that Plaintiffs' case here is no different than the litany of securities fraud claims that are routinely dismissed by federal courts.

As an initial matter, the written disclosures made to Plaintiffs, and the agreements they signed with the company, *explicitly disclaim any reliance on oral representations made outside of those materials.*  As a matter of well-established law, Plaintiffs' complaint must be dismissed for that reason alone.  There is simply no legal authority to permit Plaintiffs to proceed with

securities-fraud claims premised on oral representations, when they explicitly agreed that they would not rely on any such representations.   But moreover, even if Plaintiffs had not agreed to this decisive disclaimer of reliance on *any* of the oral representations they allege, they would be barred by the disclosures made in the written materials as to each of the specific matters they allege were misrepresented to them.

For example, Plaintiffs allege that D&D misrepresented the company's intellectual property holdings, the documentary evidence shows that Plaintiffs was specifically warned, in writing, of the very risks they now allege were realized and undermined their investment. Moreover, as sophisticated investors, Plaintiffs were fully able to investigate those issues for themselves—but they admittedly failed to do any meaningful due diligence in that regard.

Plaintiffs also allege that D&D brokers and bankers painted a rosy picture of the company's financial or operational prospects, or suggested that interest in the company among third parties was guaranteed.   But these allegations portray nothing more than the standard "puffery" that accompanies almost any sales presentation, and which courts have consistently and routinely held cannot form the basis for a securities-fraud claim.

In the end, Plaintiffs have alleged nothing more than the kind of upbeat, optimistic sales presentations that, as sophisticated investors, they have undoubtedly been exposed to on many previous occasions.   For these two individuals, who were expert in the retail distribution industry, and indeed, took jobs in the company, to argue now that they were duped into believing that a privately-financed start-up company selling "revolutionary" tooth-whitening products still in the testing phase, which admittedly had no ongoing distribution or sales, no manufacturing facility, no advertising campaign, and no source of funds other than the investors, was some kind of blue-chip investment, is simply not credible as a matter of well-established law.

Plaintiffs are well-informed investors who are unhappy with the consequences of the risks they knowingly took on, and are now looking for someone else to blame for their misfortune.  With the issuing company insolvent and its various officers scattered to the winds, Plaintiffs have set their sights on D&D, a fixed, established target they thinks have the "deep pocket" resources to give them what they want.  But the securities laws are intended to protect genuinely wronged investors, not to be used as a club by the sophisticated to recover speculative investments made with their eyes wide open, in the face of specific written disclaimers of the very representations they claim misled them.  And, as shown below, Plaintiffs cannot make an end-run around the defects in their securities-fraud claims by resorting to other claims, as those claims are just as conclusively barred as a matter of law.  In the end, Plaintiffs simply cannot be allowed to abuse the system simply because their speculative investment did not turn out the way they would have liked or anticipated, when they was explicitly warned that it could fail in exactly the manner it did, and when they specifically agreed that they would not rely on any oral representations to the contrary.   The Court should dismiss Plaintiffs' complaint in its entirety.

## Facts

On a motion to dismiss pursuant to Rule 12(b)(6), the relevant facts are those contained in the Complaint, or contained in documents referenced therein.  In this case, the Complaint references the June 2006 business plan issued by the company (¶¶ 60-70)[1], and agreements between the company and the investors, including Plaintiffs.  (¶¶ 36-44).  Those documents are attached hereto as exhibits, and relevant portions are excerpted below.

First, the business plan makes the following general admonition:

> AN INVESTMENT IN THE SECURITIES OFFERED HEREBY
> IS  SPECULATIVE  IN  NATURE,  *INVOLVES  A  HIGH*

---

[1] References to (¶__) are to the Complaint.

3

> ***DEGREE OF RISK*** AND SIGNIFICANT RESTRICTIONS ON
> TRANSFER.    SUCH   AN   INVESTMENT   ***SHOULD   BE***
> ***CONSIDERED ONLY BY ACCREDITED INVESTORS WHO***
> ***ARE ABLE TO BEAR THE ECONOMIC RISKS*** OF THEIR
> INVESTMENT FOR AN INDEFINITE PEIOD OF TIME AND
> ***SHOULD  NOT  BE  MADE  BY  ANY  INVESTOR  WHO***
> ***CANNOT AFFORD THE LOSS OF THEIR, HER, OR ITS***
> ***ENTIRE INVESTMENT.***

(Exhibit A at 9) (emphasis added).

Following this general warning, the business plan provided a laundry list of what could

go wrong with the investment in the company.  An collection of those disclaimers includes:

> ***Limited  Operating  History*** – GRINrx have a limited operating
> history. GRINrx was formed in and began selling its brand in
> 2006. Because of this limited operating history and the relatively
> recent  introduction  of  its  brands, ***the  Company's  pro  forma***
> ***historical financial information is of limited value in projecting***
> ***its  future  results***….The  Company  expects  to  continue  to  incur
> significant costs relating to product development, sales, marketing
> and administrative expenses. As a result, the Company will need to
> generate significant revenues in order to achieve profitability. ***The***
> ***Company is in the early stages of product development and even***
> ***if it does achieve profitability, it may be unable to increase its***
> ***sales  and  sustain  or  increase  its  profitability  in  the  future***.
> [emphasis added]
>
> ***Intellectual  Property  Claims/Disputes  with  Discus  Dental*** –
> GRINrx is aware that ***Discus Dental, Inc. have asserted that the***
> ***Company's  product(s)  violate  certain  of  its  patents***. GRINrx is
> also  aware  that  Discus  Dental  have  approached  members  of  the
> Company's Board of Directors and its Advisory Board in an effort
> to  persuade  them  to  disassociate  themselves  with  the  Company
> and/or to affiliate with Discus Dental; None of these individuals
> have agreed to do so and have rejected Discus Dental's overtures.
> ***Discus Dental previously had a relationship with Dr. Martin S.***
> ***Giniger  and  it  may  be  that  Discus  Dental  may  cite  their***
> ***relationship  with  Discus  Dental  in  any  disputes  over  the***
> ***Company's intellectual property.***[2]
> [emphasis added]

---

[2] The disclosure regarding Discus Dental was only included in the July business plan, which Plaintiffs claims he
received after he made their investment—although he admits that he was "made aware" by their D&D broker "of the
allegations of patent infringement asserted by Discus" prior to their investment.  (Complaint ¶ 104)

***Broad Discretion Over the Use of Net Proceeds From This Offering*** — ***The Company have significant flexibility in using the net proceeds it receives*** from this offering of Series A Preferred ***and may fail to use the net proceeds effectively to grow and sustain its business.*** [emphasis added]

***History of Losses*** — The pro forma combined company have incurred losses since inception. The Company expects that, for the next year, it will spend funds in greater amounts and at a faster rate than it receives income from sales***, and therefore expects to continue to incur losses. There can be no assurance that the Company will achieve profitability, even if it obtains and applies all of the net proceeds of the Offering.*** [emphasis added]

***Need for Additional Funds*** — The Company expects that the net proceeds from the Offering, <u>if fully subscribed,</u> together with the cash available, will provide it with sufficient capital to meet its anticipated needs for the foreseeable future. ***The Company may at some point in the future require additional working capital*** to fund the business or the Company's growth strategy. If the Company does not generate enough cash from operations to finance the business in the future, ***it will need to raise additional funds through the sale of additional equity securities. No assurances can be given that such sales would be possible***... [emphasis added]

***Competition*** — The industry is highly competitive. The Company competes on the basis of quality, price, brand recognition and distribution strength. The Company's products compete with others for consumer purchases, as well as shelf space in retail stores, and professional attention. The Company competes with numerous multinational producers and distributors of products, many of which have far greater resources than the Company. ***In particular, the Company is aware that one competitor, Discus Dental, Inc. have already initiated efforts to disparage the Company's products and to otherwise thwart the Company's efforts to implement its business plan and penetration of the market.*** [emphasis added].

***Financial Projections*** — Because the Company's future operating results are difficult to predict, ***the financial projections set forth herein are based in large part on assumptions derived from management's experience rather than actual performance data***. ***Potential investors should not rely on the estimates of the Company's future results when making an investment decision.*** These estimates are included solely as projections of the financial

5

results that might be obtained in the future based on the Company's assumptions and estimates. *__Such estimates are not included for the purpose of predicting future results or returns to investors in this Offering__*. [emphasis added]

*__Dependence on Key Personnel__* — *__The Company is relying on a small number of key individuals to implement its plans and operations, including Founder & Chief Science Officer, Dr. Martin S. Giniger, Co-Founder & Chairman,__* C. Rowland Hanson, and President and CEO, Michael Parks. To the extent that the services of any of these individuals become unavailable, the Company will be required to hire other qualified personnel. There is no assurance that adequate replacements will be found. [emphasis added].

*__Control by Management__* – *__The management team controls the majority of the shares in GRINrx__*. Therefore, management will, as a practical matter, be able to nominate and cause the election of a majority of the Company's Board of Directors, control the election of its officers and control the day-to-day affairs and management of the Company. [emphasis added]

*__Suitability__* – Because of the speculative nature of this offering, *__these securities are offered only to persons who are accredited investors__* or non-U.S. persons and *__who are in a position to accept the risks and to withstand the loss of their entire investment__*. [emphasis added].

(Exhibit A at 9-13).

The business plans also contained the following disclaimers in a section entitled

"Confidentiality Statement, Procedures and Contact Information":

This Memorandum have been prepared to assist interested parties in making their own evaluations of the Company and does not, and if hereafter supplemented will not, purport to be all-inclusive or to contain all of the information that a prospective investor may desire. __Prospective investors are urged to conduct their own independent investigation and evaluation of the Company, the information contained herein and the Proposed Transaction__.

All information presented in this Memorandum with respect to the existing business and limited operating results of the Company and *__estimates and projections as to future operations__* are based on material prepared by the management of the Company and *__involve__*

6

> *significant elements of subjective judgment and analysis that may or may not be correct. There can be no assurance that management's estimates or projections will be realized.*
>
> *Dominick & Dominick have not independently verified any of the information, including the projections; contained herein.* None of Dominick & Dominick or the Company or any of their respective affiliates, employees or representatives makes any representation or warranty, express or implied, as to the accuracy or completeness of any of the information contained herein *or any other written or oral communications transmitted or made available to a prospective purchaser or its advisors* or for any omissions from this Memorandum or any other supplemental information, *and Dominick & Dominick, the Company and their respective affiliates, employees and representatives expressly disclaim any and all liability based on or in relation to such information and communications. Only those particular representations and warranties, if any, that may be made to an investor in one or more definitive written agreements when, as and if executed, and subject to such limitations and restrictions as may be specified in such definitive written agreements, shall have any legal effect.*
> [emphasis added].

(Exhibit A at 4-5).

Series A Preferred Stock investors, including Plaintiffs, made even more extensive representations in the Series A Preferred Stock Purchase Agreement that they executed:

> *Speculative Nature of Investment*. Such Investor understands and acknowledges that the Company have a very limited financial and operating history and that *an investment in the Company is highly speculative and involves substantial risks*. *Such Investor can bear the economic risk of such Investor's investment and is able*, without impairing such Investor's financial condition, to hold the Shares and the Conversion Shares for an indefinite period of time and *to suffer a complete loss of such Investor's investment.*
>
> *Access to Data.* Such Investor have had the opportunity to review the Company's Business Plan dated June 2006 (updated June 6, 2006) as provided to such Investor by Dominick & Dominick (the "Business Plan") subject to the terms and disclaimers as stated therein. *In addition, such Investor have had an opportunity to ask questions of, and receive answers from, the officers of the Company concerning the Business Plan, the Agreements, the*

*exhibits and schedules attached hereto and thereto, and the transactions contemplated by the Agreements, as well as the Company's business, management and financial affairs, which questions were answered to its satisfaction*. … Such Investor acknowledges that the Business Plan have been, and continues to be, subject to change and that any projections included in such Business Plan…or otherwise are necessarily speculative in nature, and it can be expected that some or all of the assumptions underlying the projections will not materialize or will vary significantly from actual results. … *In making its decision whether to purchase the Shares, Investor acknowledges that it have not relied on any oral representation made by the Company, or any officer, employee, agent or affiliate of the Company, or any of its officers, employees, agents, representatives or affiliates, not expressly set forth in the Agreements.*

[emphasis added].

(Exhibit B at 5-6).

## Argument

1. **Plaintiffs' Claim for Violation of Section 10(b) Fails to Plead Reliance, and Fails to Meet the Particularity Requirements of Rule 9(b) and the PSLRA with Respect to Scienter.**

Plaintiffs' first claim for relief, alleging D&D's violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. §j(b), is defective for three independent reasons. First, it fails to allege facts upon which Plaintiff could establish the necessary element of justifiable reliance. Second, it fails to allege that the value of the company fell due to the alleged fraud, and thus fails to allege the requisite element of loss causation. And third, even if the claim actually pleaded those essential elements, the claim would have to be dismissed for failure to plead with the particularity required of a fraud claim under Rule 9(b) and the PSLRA.

8

A.    Plaintiffs Fails to State a Fraud Claim Due to Their
      Inability to Plead Justifiable Reliance

Plaintiffs' securities fraud claim utterly fails to plead justifiable reliance, an essential element of any fraud claim.    Specifically, Plaintiffs' claim requires that they allege facts sufficient to permit an inference that it was reasonable for them to rely on the purported misrepresentations or omissions of D&D's representatives regarding their investment in the company. *See Transit Rail, LLC v. Marsala*, Fed. Sec. L. Rep. (CCH) P94,444 (W.D.N.Y. 2007) (justifiable reliance is "a critical element of any securities fraud or common law fraud claim."). The allegations set forth in the complaint not only fail to support the necessary inference at the pleading stage, they entirely foreclose any possible showing at any time in the future that Plaintiffs justifiably relied on any of the alleged misrepresentations made to them by D&D's representatives.

As a preliminary note, Plaintiffs' investment was indisputably speculative.  The company was a startup venture offering investors the chance to be in on the "ground floor" of a company dedicated to tooth-whitening and other dental products, a decidedly crowded and competitive industry, with large multinational corporations standing between the company and any prospect of viability.    The company had no established history, no contracts, no vendors, no sales or distribution agreements, no advertising campaign, no products ready for market, no revenue stream, and no guaranteed stream of financing other than private-placement investors like Plaintiffs.  Indeed, it was because the company was an untested startup that the disclosures given to investors were so robust.   Those disclosures, and Plaintiffs' sophistication and particular expertise in retail distribution, bar any claim here as a matter of law.

First, a where written material provided to an investor <u>bespeaks caution</u> as to the subject matter of the alleged representations or omissions by the broker, the investor *cannot*, absent an

extraordinary showing, recover damages on account of the alleged misrepresentations or omissions.  Second, a <u>sophisticated investor</u> is bound to a higher duty of due diligence, and is not entitled to rely on the representations of a broker.  Both principles are well-developed  in the case law, and, when applied together, as is appropriate here, they preclude any recovery by Plaintiffs, *even if their allegations of misrepresentations and omissions  are accepted as true.*

    i.      <u>The "Bespeaks Caution" Doctrine</u>

The "bespeaks caution" doctrine means that "[c]ertain alleged misrepresentations in a stock offering are immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language set out in the same offering."  *Halperin v. Ebanker Usa.com*, 295 F.3d 352 (2d Cir. 2002) (granting motion to dismiss pursuant to Rule 12(b)(6)).  As a practical matter, this means that where a written offering material contains language specifically warning of a risk, an investor cannot rely on a broker's oral representation that the risk is, in fact, not present.  *See Primavera Familienstiftung v. Askin*, 173 F.R.D. 115 (S.D.N.Y. 1997) (dismissing, pursuant to Rule 12(b)(6), claim for securities fraud based on oral misrepresentation by broker, where written material contradicted broker's assurances).

As a threshold matter, Plaintiffs is absolutely barred from claiming that they relied on oral representations by D&D representatives, because the written materials they admittedly received specifically disclaim any such reliance:

> ***In making its decision whether to purchase the Shares, Investor acknowledges that it have not relied on any oral representation made by the Company, or any officer, employee, agent or affiliate of the Company, or any of its officers, employees, agents, representatives or affiliates, not expressly set forth in the Agreements.***

rights were contested. As noted above, the company's disclosures described a potential lawsuit, and described the past connection between the inventor of the property and Discus Dental, which, as the disclosures explained, was contesting the company's ownership rights.

Plaintiffs cannot, as a matter of law, contest that they should have been independently investigating whether or not such a suit had actually been filed and monitoring the situation for further developments. *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2004 U.S. Dist. LEXIS 18580 (S.D.N.Y. 2004) (investor cannot claim justifiable reliance on broker's oral representations where written materials raised "red flags" indicating the need for further investigation). Nor can they contend that oral representations (which they explicitly disclaimed reliance on) somehow obscured this risk. As *Steed* makes clear, once the red flag is up, the burden is not on the issuer, broker, or investment banker, but on the highly sophisticated investor, who is more than capable of searching a court docket or telephoning counsel for the adverse party.

To the extent there was a discrepancy between what Plaintiffs allegedly was told (*Giniger* does not have control) and what the plain unequivocal language of the business plans warned (the *management team* does have control), the discrepancy only further highlights the duty Plaintiffs was under to investigate and resolve the discrepancy for himself. *See, e.g., Louros v. Kreicas*, 367 F. Supp. 2d 572 (S.D.N.Y. 2005) (investor suit premised on broker assurances that transaction was risk-free dismissed where assurances contradicted by written materials); *Steed, supra*, 2004 U.S. Dist. LEXIS 18580 (same).

ii.    <u>Sophistication</u>

"A sophisticated investor is held to a higher standard of care and prudence when investigating a potential purchase." *Riverside Holdings v. Ark. Best Corp.*, 1996 U.S. Dist. LEXIS 5316 (S.D.N.Y. 1996) (*citing Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020 (2d Cir.

1993)).  "The more sophisticated the investor and the more resources available to the investor, the greater the burden on the investor to act to protect itself." *Crigger v. Fahnestock & Co., Inc.*, No. 01 Civ. 7819 (JFK), 2003 U.S. Dist. LEXIS 16438, (S.D.N.Y. Sept. 18, 2003).  In short, "[t]hey securities laws were not enacted to protect sophisticated businessmen from their own errors of judgment."  *NBI Mortg. Inv. Corp. v. Chemical Bank*, Fed. Sec. L. Rep. (CCH) P96,066 (S.D.N.Y. 1977).

Here, Plaintiffs are undeniably sophisticated within the meaning of these authorities. First and foremost, by their own admission, both are actively involved in the retail distribution industry—so much so that they became employed by the company to operate its distribution effort. (Complaint ¶¶ 100-103).  As such, they are not only sophisticated in a general sense, but actually have a particular expertise in the field of the investment at issue here.  They cannot claim, then, to have relied on any alleged representations regarding the company's future prospects, such as the allegation that the company's products were soon to be available for distribution. (Complaint ¶ 98).  Indeed, as experts in retail distribution, Plaintiffs must be presumed to have known much better than a stockbroker what sort of product distribution was feasible with respect to the company's products.

As a result, and independently of the bespeaks-caution doctrine discussed above, Plaintiffs cannot establish reliance through their repeated allegations that the company was presented to them as offering exceptional opportunities, possessing "revolutionary" products, was likely to be able to secure intellectual-property protection for its claimed innovations, or would be "self-funding" and become extraordinarily profitable. (¶¶ 11-19)

Indeed, this Court addressed, and rejected, allegations almost identical to Plaintiffs' in a case decided less than four months ago, *Harborview Master Fund, LP v. LightPath Techs., Inc.*,

2009 U.S. Dist. LEXIS 7731 (S.D.N.Y. 2009) (Buchwald, J.). In that case, the Court described the alleged misstatements and why they were not actionable:

> Plaintiffs also contends that [the issuing company's CEO] knew about [the company's] financial and operational difficulties during [a] conference call on June 29, 2007, making their statements "tout[ing] [the company's] products, markets, and technology, and represent[ing] to [Plaintiffs] that the company was performing well, and that sales and profitability were on the rise" false and misleading....We find this claim to be unpersuasive. Such a vaguely alleged misstatement does not satisfy Rule 9(b) and is far too general to support a federal securities fraud claim. At worst, [the CEO's] statements are non-actionable corporate puffery. The Second Circuit have made clear that "general announcements" that a company is optimistic about earnings and expects a product to perform well "cannot constitute actionable statements under the securities laws" because they would not mislead a reasonable investor....Likewise, statements expressing optimism about current and future economic growth are too non-specific to be actionable.

*Id.* at * 31.[3]

Plaintiffs, as sophisticated investors, must be presumed to have been even more capable than a "reasonable investor" of distinguishing enforceable agreements from the routine projections of positive outcomes that every such investor hears from their brokers and advisers when being pitched an investment idea. The Court would properly dismiss Plaintiffs' fraud claim based on their sophistication, and consequent inability to allege reliance, even if the claim were not otherwise barred for the reasons discussed above.

      iii.     <u>Conclusion - Plaintiffs Have Failed to Plead Reliance</u>

---

[3] *Citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir. 1996.) and *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir. 1996)); *see also Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ("expressions of puffery and corporate optimism do not give rise to securities violations."); *see also Pollio v. MF Global, Ltd.*, 2009 U.S. Dist. LEXIS 29777 (S.D.N.Y. 2009) (same).

Plaintiffs' claim for securities fraud, even if time-barred, would have to be dismissed for its failure to plead the essential element of justifiable reliance. The specific, written disclosures they were given disclaiming oral representations and bespeaking caution as to particular matters, standing alone, preclude any showing that they could have reasonably relied on the representations they claim were false and led them to invest in the company. This would be the case even if they were not sophisticated investors. *See Bull, supra,* 1992 U.S. Dist. LEXIS 3686 at *24. But they are, by their own admission, sophisticated. They cannot now base a securities-fraud claim on a lack of information, when they admit that they had every bit of information they needed to make an informed and intelligent choice about their investment in what they knew, and were repeatedly told in writing, was an unproven startup venture whose core asset was embroiled in a lawsuit. The law may allow investors to overcome written disclaimers in some cases, but this is not one of them.

C.    <u>Plaintiffs Fails to State a Fraud Claim Due to Their Inability to Plead Loss Causation</u>

Separately, Plaintiffs' claim for fraud is barred by their failure to plead the necessary element of loss causation. In order to prove loss causation:

> a Plaintiffs needs to allege more than that the purchase price was inflated due to the fraudulent statements. A claimant also must show that the decline in the market price was due to the fraud, as opposed to other market factors, such as changed investor expectations, *the actualization of the company's risks*, or other conditions that may account for some or all of the lower price.

*Gordon Partners v. Blumenthal*, 293 Fed. Appx. 815 (2d Cir. 2008) (emphasis added) (*citing Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 338, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)). In other words, Plaintiffs needed to allege that the company failed *because of the alleged fraud.*

But Plaintiffs' complaint alleges nothing of the kind. Indeed, Plaintiffs admit that the company failed, and the value of its investment declined, not because of any alleged fraud, but because of underlying weaknesses in the company's business model, which were ultimately realized. In other words, the "actualization of the company's risks" specifically mentioned by the Second Circuit in *Gordon Partners*. As such, Plaintiffs' securities-fraud claim is precluded due to their failure to plead loss causation.

D.    Plaintiffs Have Not Pleaded Scienter With The
       Particularity Required by Rule 9(b) and the PSLRA

Rule 9(b) of the Federal Rules of Civil Procedure requires all claims of fraud to be pleaded with particularity. Moreover, with respect to securities fraud claims, the Private Securities Litigation Reform Act of 1995, 15 U.S.C.S. § 78u-4(b)(3)(A) ("PSLRA"), heightened the requirements relating to the pleading of scienter, which previously could be pleaded in general terms. Under the new standard, a Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*

To meet this requirement, the complaint must allege "facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). "The strength of the circumstantial evidence of a defendant's recklessness or conscious misbehavior must be...greater than that which suffices to show motive." *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 255 (S.D.N.Y. 2008) (Buchwald, J.). Furthermore, the Supreme Court have stated that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 168 L. Ed. 2d 179, 127 S. Ct. 2499, 2007 WL 1773208, at *10 (June 21, 2007). Finally, "the appropriate inquiry is

16

'whether *all* the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Pollio* 2009 U.S. Dist. LEXIS 29777 at * 15 (*quoting Tellabs*, 127 S. Ct. at 2509 (emphasis in original)).

Here, the complaint utterly fails to meet the PSLRA's heightened standard for pleading scienter. Specifically, Plaintiffs never allege any motive on the part of D&D or its representatives to defraud the company's investors—there is not a single allegation in the complaint suggesting that D&D or its representatives had anything at all to gain, whether economically or otherwise, from deceiving Plaintiffs into investing in the company. (Complaint, *passim*). Moreover, any attempt to show "circumstantial evidence of conscious misbehavior or recklessness" on D&D's part is completely contradicted by Plaintiffs' own allegations that D&D and its representatives made repeated, determined efforts to assist the company's management, advise responsible use of the investors' funds, and attempting to help the investors salvage the company's prospects when it, like innumerable other start-up ventures, appeared to be failing. (¶¶ 79-90). Thus, Plaintiffs have also failed to plead scienter under the "circumstantial" prong— they certainly have not done so with the "greater showing" required by this Court in *Matsumura*. As such, the Court would have to dismiss Plaintiffs' complaint for failure to satisfy the particularity requirements of Rule 9(b) and the PSLRA, even if the claim were not time barred, and even if Plaintiffs had properly pleaded justifiable reliance.

Plaintiffs' claim for securities fraud, then, fails for each of the above three reasons. The claim fails to allege justifiable reliance; it fails to allege loss causation; and it fails to plead scienter with the requisite particularity. For each of these reasons, independently, the Court must dismiss Plaintiffs' first claim for relief as a matter of law.

2.    **Plaintiffs' Claim for Common-Law Fraud Fails for the Reasons
Precluding their Federal Securities Act Claim.**

Plaintiffs' second claim for relief is a carbon-copy of their federal securities fraud claim, merely recast as a fraud claim under New York common law.  Indeed, Plaintiffs specifically acknowledges that their common-law claim is premised on exactly, and only, the same allegations as their federal law claim:

> The factual predicates which form the basis for the violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5, as alleged, also give rise to a cause of action against defendants D&D, Murphy and Corbett, and each of them, for common law fraud under the laws of the state of New York.

> [¶ 123]

Apart from this incorporation by reference, Plaintiffs' second cause of action contains no substantive allegations.  (¶¶ 122, 124).

As noted in Point 1, above, Plaintiffs have failed to allege facts sufficient to establish the elements of justifiable reliance and scienter required to plead a federal securities fraud claim. "Because the elements of common-law fraud in New York are substantially identical to those governing § 10(b), the identical analysis [on a motion to dismiss] applies." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Securities LLC*, 446 F. Supp. 2d 163, 195 (S.D.N.Y. 2006) (dismissing common-law fraud claim where Plaintiffs failed to adequately plead fraud claim under Securities Exchange Act).  As such, Plaintiffs' common-law fraud claims must be dismissed on the same grounds as their federal securities fraud claim.

**3.      Plaintiffs' Control-Person Claim is Barred By Their Failure To Allege the Three Essential Elements of Such a Claim.**

Because Plaintiffs have failed to plead any violation of the federal securities laws, they are barred from asserting a claim for control-person liability under Section 20(a) of the Securities Exchange Act.  As this Court have explained:

> To establish a *prima facie* case of control-person liability, [a] Plaintiffs must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, and show that the controlling person was 'in some meaningful sense' a culpable participant in the fraud perpetrated by controlled person.

*Harborview Master Fund, LP.*, 2009 U.S. Dist. LEXIS 7731 at * 33.   Here, none of these requirements have been satisfied.

First and foremost, Plaintiffs have failed to plead a federal securities fraud claim against D&D—or anyone else.  Plaintiffs cannot "show a primary violation by the controlled person," because they have failed to show any "primary violation" at all.  *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346 (S.D.N.Y. 2008) (because "Plaintiffs have not sufficiently alleged primary liability under Section 10(b), they have also not alleged control person liability under Section 20 of the Exchange Act") (*citing In re AXIS Capital Holdings Ltd. Secs. Litig.*, 456 F. Supp. 2d 576, 596 (S.D.N.Y. 2006) (collecting cases)).  Plaintiffs' claim for control-person liability must be dismissed for this reason alone.

Second, even if Plaintiffs had actually made a proper pleading that someone within the company had been a primary violator of the federal securities laws, they still fail to allege any facts establishing any control over such company insiders.   Indeed, in those parts of the complaint where Plaintiffs purports to be alleging control of the company by D&D, the allegations actually show the exact opposite.

Case 1:09-cv-00353-NRB    Document 9    Filed 06/09/09    Page 21 of 25

For example, Plaintiffs claims that D&D's attempts to moderate the company's spending demonstrate control (¶¶ 79-85), but Plaintiffs admits that D&D was unable to have any meaningful effect, as the company's fortunes continued to decline *Id.* Even more strikingly, Plaintiffs suggests that D&D's efforts to help investors in their effort to salvage the company on its deathbed constitute evidence of control (¶¶ 86-90), even though Plaintiffs admits that D&D's attempts to assist investors were a complete failure. *Id.* And finally, Plaintiffs' repeated references to D&D's role as the sole marketer of the company's securities, to the fact that D&D raised all of the company's investment capital, or even Plaintiffs' unfounded suggestion that D&D was a statutory underwriter, have no bearing on control-person status as a matter of black-letter federal law. *In re Oak Tech. Sec. Litig.*, 1997 U.S. Dist. LEXIS 18503, * 41-42 (N.D. Cal. 1997) ("position as underwriter, broker-dealer and market maker and its substantial ownership of [company's] common stock…does not create any presumption of control." ).

Finally, even if Plaintiffs had alleged a primary violation by a controlled person at the company, and even if they had alleged actual control over such a person, they still alleges no facts to show "that the controlling person was 'in some meaningful sense' a culpable participant in the fraud perpetrated by controlled person." Indeed, all that Plaintiffs alleges with respect to D&D is *non*-participation—that is, an alleged failure to act to rescue the company or discipline its officers. (¶¶ 79-85). Such allegations of nonfeasance are not sufficient to establish "culpable participation". *See In re Blech Sec. Litig.,* 961 F. Supp. 569, 586 (S.D.N.Y. 1997) (mere knowledge of wrongdoing by others does not satisfy culpability requirement).

Plaintiffs have not alleged a primary violation, have not alleged any actual control by D&D of any persons against whom Plaintiffs have adequately pleaded fraud, and have not

alleged D&D's culpable participation in any wrongdoing within the meaning of Section 20(a). The Court should dismiss Plaintiffs' third claim for relief alleging control-person liability.

**4.     There is No Privity with D&D Allowing for a Claim of Beach of Contract.**

Seemingly as an afterthought, Plaintiffs alleges breach of contract for their fourth cause of action, despite the fact that Plaintiffs have never been in a contractual relationship with D&D. Certainly, Plaintiffs' complaint does not contain an allegation of any particular written or oral agreement between himself and D&D.  Instead, Plaintiffs attempts to cobble together this claim through this single paragraph of the complaint:

> Upon information and belief, the relationship which existed between Plaintiffs and D&D, at all times material, gave rise to a contract between or among the parties, pursuant to which, among other things, D&D and the individual defendants covenanted and agreed to conduct themselves in accordance with any and all applicable securities laws, rules and regulations, including those propounded by the NASD, SEC or other regulatory authority.

(¶ 130).

Plaintiffs does not explain how it is that an undefined "relationship" could "give rise to a contract," nor does they explain how D&D's duty to obey laws and regulations, which applies to everything it does, somehow confers privity on Plaintiffs.  Of course, there is no authority to support this novel conception, and the Court should decline to permit Plaintiffs to salvage their complaint simply by transforming ordinary duties owed to the public into specific contractual obligations owed specifically to Plaintiffs.

**5.     Plaintiffs' Negligence Claim is Barred by the Martin Act.**

Plaintiffs' complaint engages in the usual "kitchen sink" approach to securities fraud complaints by adding a claim for negligence, in an apparent attempt to avoid the various specificity and statute of limitations hurdles associated with fraud claims.  However, under New

York State, the hurdles are not lower for a negligence claim—indeed, there are no hurdles, because any such negligence claim, when premised, as here, on a securities transaction, *is absolutely barred by the Martin Act.*

The Martin Act gives the Attorney General of New York *exclusive* power to enforce the state's securities laws. New York State courts have held that this reservation of powers establishes a complete prohibition against common-law negligence claims based on securities purchases or sales. *See Horn v. 440 E. 57th Co.,* 151 A.D.2d 112 (1st Dep't 1989) (negligent misrepresentation claim relating to securities transaction absolutely barred by Martin Act).[4]

New York's rule prohibiting common-law negligence claims in the securities context have been repeatedly enforced by this Court when other Plaintiffss have attempted what Plaintiffs seeks to do here—backstop a failed fraud claim with a negligence claim requiring a nominally lower pleading burden. *See Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 30, 58 (S.D.N.Y. 2006) (barring negligent misrepresentation claim as precluded by Martin Act).[5] As a result, the Court is bound to dismiss Plaintiffs' negligence claim as a matter of law.

**6.    Plaintiffs' Request for a Declaratory Judgment is Improperly Directed at D&D, and Seeks Non-Declaratory Relief that Cannot Be Awarded as Against D&D.**

In their final claim for relief, Plaintiffs asks the Court to award them a declaration that the Stock Purchase Agreement is "void *ab initio*" (¶ 145), which Plaintiffs suggests will allow them to rescind that agreement (¶ 144)—although they does not actually make a claim for rescission.

---

[4] *See also Rego Park Gardens Owners, Inc. v. Rego Park Gardens Assocs.,* 191 A.D.2d 621 (2d Dep't 1993) (same); *Breakwaters Townhomes Ass'n of Buffalo, Inc. v. Breakwaters of Buffalo, Inc.,* 207 A.D.2d 963, (4th Dep't 1994) (same).

[5] *See also Marcus v. Frome,* 329 F. Supp. 2d 464, 468 (S.D.N.Y. 2004) (same); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC,* No. 02 Civ. 0767 (LBS), 2003 U.S. Dist. LEXIS 15206, at *2-*3 (S.D.N.Y. Sept. 2, 2003) (same); *Mfr. Life Ins. Co. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 2000 U.S. Dist. LEXIS 7444, No. 99 Civ. 1944 (NRB), at *5 (S.D.N.Y. June 1, 2000) (same); *Noz v. Value Investing Partners, Inc.*, 1999 U.S. Dist. LEXIS 8836, *2 (S.D.N.Y. June 14, 1999) (same).

Plaintiffs also asks for a "declaration mandating that D&D...return to [Plaintiffs] any and all sums" they invested, which sums D&D transferred to the company.  (¶ 146).  Plaintiffs then alleges that "[t]here is no adequate remedy at law." (¶ 147).

First of all, the Stock Purchase Agreement is a contract between Plaintiffs and the company, which is not a party here.  D&D have no ability to speak to the continuing validity of that agreement, and a declaration in that regard in a litigation against D&D will have no effect.  Likewise, any action for rescission of that agreement would necessarily require the company as a defendant, and would have nothing to do with D&D.

Second, a declaration cannot "mandate" anything.  If Plaintiffs had wanted relief "mandating" the transfer of specific funds, they would have had to make a claim seeking an injunction.  But in any event, Plaintiffs *have* sought equivalent relief.

While Plaintiffs alleges that there "is no adequate remedy at law," the relief sought in Plaintiffs' other claims for relief—money damages—say otherwise.  The fact that Plaintiffs' other claims fail as a matter of law, and must be dismissed, does not render the theoretical remedies available to Plaintiffs inadequate.  It simply means that Plaintiffs have no lawsuit.  They cannot avoid that fact by claiming that their own failure to make out a case somehow entitles them to amorphous and misdirected equitable relief.  The Court should therefore dismiss Plaintiffs' haphazard request for a declaratory judgment.

**Conclusion**

For the foregoing reasons, Defendant Dominick & Dominick LLC respectfully requests that the Court grant its motion to dismiss the complaint in its entirety.

Dated: New York, New York
      June 9, 2009

                          HERRICK, FEINSTEIN LLP

                  By:_____/s/_____
                          Howard Elisofon
                          John Oleske
                      2 Park Avenue
                      New York, New York  10016
                      Telephone:  212-592-1400
                      helisofon@herrick.com
                      joleske@herrick.com
                      *Attorneys for Defendant*
                      *Dominick & Dominick LLC*